IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                                    CASE NO. 09-06996

RAQUEL NOEMI FIGUEROA                                     CHAPTER 13
ALONSO

    Debtor

OPINION AND ORDER

This case is before the court upon the Debtor's *Objection to Claim Number (8-1) by Creditor Banco Popular de Puerto Rico and/or Request for entry of Order for the Trustee to Perform a Recovery of Disbursed Funds* (Docket No. 38). The Debtor argues that Banco Popular de Puerto Rico's (hereinafter referred to as "BPPR") amendment to proof of claim #8 filed three (3) months before plan completion constitutes a collateral attack on the confirmed plan. If a creditor does not object to confirmation, 11 U.S.C. §1327 binds the creditor to the terms set forth in the confirmed plan and precludes collateral attack of the confirmed plan. BPPR filed its *Response to "Objection to Claim Number (8-1) by Creditor Banco Popular de Puerto Rico and/or Request for entry of Order for the Trustee to Perform a Recovery of Disbursed Funds"* (Docket No. 47) arguing that pursuant to 11 U.S.C. §1322(b)(2) the Debtor cannot modify the rights of holders of secured claims secured by debtor's principal residence and thus, BPPR should be allowed to amend its claim. The Chapter 13 Trustee ("Trustee") filed his *Objection to Amended Claim 8 filed by Banco Popular de Puerto Rico and Position Regarding Debtor's Objection to Claim 8 and Creditor's Response to the Same* (Docket No. 50) establishing the following: (i) BPPR's amended proof of claim does not satisfy the tree-prong test established in In re Hemingway Transp., 954 F. 2d 1 (1st Cir. 1992) for the amendment of proof of claims which this court adopted in In re Jimenez Galindez, 514 B.R. 79 (Bankr. D.P.R. 2014); (ii) in In re Jimenez Galindez this court determined that the terms of a plan are binding

-1-

over the terms of a proof of claim, as long as the due process requirements of reasonable and actual notice were satisfied; and (iii) in <u>In re Ruiz Martinez</u>, 513 B.R. 779, this court determined that a creditor's mistake in a claim can only be attributed to such creditor and, therefore, the creditor is prevented from amending its claim at a late point in the bankruptcy, thus BPPR's amendment to its proof of claim is untimely. For the reasons set forth below the court grants Debtor's objection to BPPR's amended claim #8-2, thus BPPR's amended claim #8-2 is disallowed.

Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(B). Venue of this proceeding is proper under 28 U.S.C. §§1408 and 1409.

Facts and Procedural Background

The Debtor filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code on August 25, 2009. The Debtor included in Schedule D (Creditors Holding Secured Claims) BPPR's secured mortgage debt in the amount of $79,035.41. On August 25, 2009, the Debtor filed her Chapter 13 Plan of Reorganization (Docket No. 4). The plan consisted of the following: (i) a plan base of $25,500 ($425 x 60); (ii) $2,175 of attorney fees that will be paid through the plan; (iii) the arrears owed to BPPR in the amount of $16,000 shall be paid through the plan pursuant to 11 U.S.C. §1322(b)(3); (iv) all allowed priority claims shall be paid in full unless creditor agrees otherwise; and (v) the Debtor will pay directly to BPPR its secured claim. The 341 meeting was held and closed on October 2, 2009.

On October 22, 2009, BPPR filed claim #8-1 in the amount of $81,321.93 based on a mortgage note and secured with real property with a value of $125,000. BPPR filed supporting documentation for its claim, which consisted of the following documents: (i) the mortgage deed; (ii) a mortgage note in the amount of $75,800 and an interest rate of 7.375%; and (iii) a statement of account dated September 26, 2009 which provided the following account detail: (a) principal balance as of 06/01/08 in the amount of $70,234.44; (b) accrued interest from 05/01/08 to

-2-

09/30/09 in the amount of $7,323.65; and (c) title search in the amount of $35; (d) a line item titled "Other" in the amount of $1,867.50; and (e) legal fees in the amount of $1,861.34. The Statement of Account also lists the total pre-petition amount in arrears in the amount of $3,763.84 and it also lists that there are 0 pre-petition payments of $555 in arrears. The Statement of Account includes the following "Other Information:" (i) next payment due: 06/01/08; (ii) interest rate of 7.375%; and (iii) P& [monthly payment] of $523.53; and (iv) monthly late charge of $26.18.

On October 29, 2009, the Debtor filed her *Amended Plan and Notice of Opportunity to Object and for a Hearing* (Docket No. 23). The amended plan consisted of the following: (i) a plan base of $25,500 ($425 x 60); (ii) $2,175 of attorney fees that will be paid through the plan; (iii) the arrears owed to BPPR in the amount of $3,763.84 shall be paid through the plan pursuant to 11 U.S.C. §1322(b)(3); (iv) all allowed priority claims shall be paid in full unless creditor agrees otherwise; (v) the Debtor will pay directly to BPPR its secured claim and to the San Juan Municipality; and (vi) tax refunds will be used to fund the plan until plan completion. On November 18, 2009, the court entered an Order confirming the Debtor's Chapter 13 plan dated October 29, 2009 (Docket No. 27).

Subsequently, on May 23, 2014, that is, fifty-five (55) months after filing its original claim, BPPR filed amended secured claim #8-2 in the amount of $83,209.53 of which $13,298.34 was allocated to pre-petition arrears. The supporting document filed for its amended claim was a statement of account dated May 23, 2014 which provided the following account detail: (a) principal balance as of 05/01/08 in the amount of $70,325.76; (b) accrued interest from 04/01/08 to 08/25/09 in the amount of $7,261.13; (c) accrued late charge of $1,858.80; (d) title search in the amount of $35; (e) a line item titled "Other" in the amount of $1,867.50; and (f) legal fees in the amount of $1,861.34. The statement of account also lists the total pre-petition amount in arrears in the amount of $13,298.34 which is allocated in the following manner: (i) $8,880 in pre-petition arrears (16 payments of $555 each); (ii) late charges of $654.50; (iii) title search of $35; (iv) "Other" in the amount of $1,867.50; and (v) legal fees of $1,861.34. The

statement of account includes total post-petition arrears of $1,759.30 which consist of one post-petition payment of $555 and late charge in the amount of $1,204.30. The total amount of pre-petition and post-petition arrears is $15,057.64. On May 28, 2014, BPPR filed an *Informative Motion* informing that it had amended its claim which requires payments in the amount of $13,298.34 and thus, it appears that the plan is insufficiently funded (Docket No. 32). On June 24, 2014, the Debtor filed a *Motion Requesting Entry of Order* requesting an extension of thirty (30) days to file an objection to BPPR's amended claim. The Debtor stated that in response to the amended claim, a safe harbor letter under Fed. R. Bankr. P. 9011 was sent to creditor's attorney on June 20, 2014 to which no response was received (Docket No. 34). On June 25, 2014, the court granted the Debtor's request for an extension of time to file her objection to BPPR's amended claim (Docket No. 35).

On July 24, 2014, the Debtor filed her *Objection to Claim number (8-1) by Creditor Banco Popular de Puerto Rico and/or request for entry of Order for the Trustee to Perform a Recovery of Disbursed Funds* and argued as follows: (i) BPPR failed to include a detailed breakdown of the amounts being claimed and the same are excessive. The claim includes an unreasonable amount of attorney's fees, costs and other related expenses for which no evidence has been provided to justify the same; (ii) claiming these amounts violate and breach the following: (1) the contractual agreement; (2) disclosure according to the Truth in Lending Act and Regulation "Z;" (3) the Pooling and Servicing Agreement; (4) Applicable Guidelines to this type of mortgage loan; (5) any and all other servicing, master servicing, sub-servicing, contingency servicing, special servicing, or back-up servicing agreements; (6) the reasonableness standard; (7) loss mitigation rules and workout procedures related to any defaults regarding this loan and similar loans; (iii) the amendment to proof of claim #8 constitutes a collateral attack on the confirmed plan which pursuant to 11 U.S.C. §1327 has become *res judicata* amongst the parties to the claim and the bankruptcy estate. Moreover, in the case of In re Ayala Pagán, case No. 09-07451 (EAG) the court reasoned that a confirmed plan has *res judicata* effect pursuant to section 1327 and post-confirmation amendments to a proof of claim to include charges not

-4-

included in the confirmed plan was a collateral attack of the plan's confirmation; (iv) "[h]ad BPPR originally filed proof of claim #8 for $13,298.34, the amount it now claims as the correct amount of pre-petition arrears, the plan would have been sufficient to cover the pre-petition arrears now claimed. BPPR's lack of diligence places the Debtor in an untenable situation and could probably force her to file a second bankruptcy or have her residential property foreclosed, slashing her hopes for a fresh start after dutifully complying with the terms of the confirmed Chapter 13 plan. To prevent this gross injustice, Debtor appeals to the equitable powers of the Court;" (v) the doctrine of laches applies to BPPR's actions due to its unreasonable delay in amending its proof of claim when Debtor is three months short of completing plan payments; and (vi) if the court allows BPPR amended claim, then Debtor request the court to order the Trustee to recover the amounts already distributed to unsecured creditors which amount to $15,639.78 (Docket No. 38). On August 20, 2014, BPPR file a *Motion Requesting Extension of Time to Respond to Debtor's Objection to Claim* of thirty (30) days (Docket No. 44) which was granted by the court on August 21, 2014 (Docket No. 45).

On September 19, 2014, BPPR filed its *Response to "Objection to Claim Number (8-1) by Creditor Banco Popular de Puerto Rico and/or Request for Entry of Order for the Trustee to Perform a Recovery of Disbursed Funds"* by which it argues as follows: (i) the amount of $1,902.50 corresponds to $35 for a title search and pre-petition costs and fees in the amount of $1,867.50 (Exhibit A). The amount of $1,861.34 corresponds to pre-petition legal fees related to foreclosure proceedings in the amount of $1,561.34 (Exhibit B) and a $300 flat fee charged by BPPR on bankruptcy loans; (ii) section 1322(e), if a Chapter 13 plan that proposes to cure a mortgage default of pre-petition arrearage, "shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." Section 1322(e) besides including the interest under a mortgage agreement, includes other charges that comprise the mortgagee's arrearage such as attorney's fees, costs and late charges; (iii) the amount of pre-petition arrearage which includes pre-petition attorney's fees must be determined in conformity with the underlying agreement and applicable nonbankruptcy law, and is not subject to a determination of

reasonableness under federal Bankruptcy law. These fees and costs were included in the original proof of claim and were never objected to by the Debtor; (iv) "bankruptcy statute limiting oversecured creditors only to reasonable attorney['s] fees is inapplicable to calculation of arrearage amount which must be cured." 11 U.S.C. §§506(b), 1332(e); See In re Virgen Mercado Alvarez, 458 B.R. 645;" (v) the Debtor cannot modify the rights of secured claims secured by debtor's principal residence pursuant to 11 U.S.C. §1322(b)(2); the instant case is distinguishable from In re Ayala Pagán, case No, 09-07451 (EAG) because in In re Ayala Pagán the plan confirmed was a pay in full through the plan and in the instant case the confirmed plan proposed to cure arrears and maintain current payments; (vi) In re Jimenez Galindez is distinguishable from the instant case because in the instant matter Debtor was aware of BPPR's mistake, given that the Debtor had proposed to pay $16,000 in pre-petition arrears. The Debtor amended the plan based upon BPPR's mistake; (vii) the totality of the circumstances indicate that the plan confirmed was not filed in good faith pursuant to 11 U.S.C. §1325(a)(3) because the same was filed to take advantage of BPPR's mistake; and (viii) the established precedent in the First Circuit is that amendments to proof of claims timely filed are freely allowed to particularize the amount due under a previously asserted right to payment or simply to cure technical defects in the original claim. See In re Hemingway Transp., 954 F. 2d 1, 10 (1st Cir. 1992); In re Crane Rental Co., 341 B.R. 118 (Bankr. D. Mass. 2006) (Docket No. 47).

On September 30, 2014, the Trustee filed his *Objection to Amended Claim 8 filed by Banco Popular de Puerto Rico and Position Regarding Debtor's Objection to Claim 8 and Creditor's Response to the Same* arguing the following: (i) the amendment to the proof of claim by BPPR is not proper pursuant to the criteria established in In re Hemingway Transport, because on month 57 of the plan, BPPR is asserting a new right to payment to which Debtor was not properly alerted. Moreover, the amendment to the claim results in unfair prejudice to unsecured creditors who have received disbursements in this case since the year 2011 and to the Trustee who would have to recover payments that he made pursuant to the confirmed plan and BPPR's original claim. The amendment is a dilatory tactic because it prevents the closing of the

case in order to tardily correct a mistake that BPPR has admitted to making; (ii) BPPR received payments in the amount of $3,763.84 for pre-petition arrears in conformity with its original claim and the confirmed plan; and (iii) BPPR did not file an objection to the plan, nor reacted when it ceased receiving payments from the Trustee in February 2011; (iv) in In re Ruiz Martinez, 513 B.R. 779 (Bankr. D.P.R. 2014) this court determined that a creditor's mistake in a claim can only be attributed to such creditor and, therefore, it is prevented from amending its claim at a late point in the bankruptcy (Docket No. 50). In said motion, the Trustee disclosed that after BPPR amended its proof of claim, the amounts of $395.75 and $391 were disbursed to BPPR on June 2, 2014 and July 1, 2014, respectively. Given these additional disbursements, the Trustee requests that the amount of BPPR's pre-petition arrears be in the amount of $4,550.59 which equals the amount disbursed by the Trustee. On October 13, 2014, BPPR filed its *Response to "Trustee's Objection to Amended Claim Number 8 filed by Creditor Banco Popular de Puerto Rico and Position Regarding Debtor's Objection to Claim 8 and Creditor's Response to the Same"* stating that it incorporates by reference its response to Debtor's objection at docket No. 46 as its response to the Trustee's objection (Docket No. 52). On December 9, 2014, the Debtor filed her *Reply to Banco Popular de Puerto Rico's Response to Objection to Claim #8-1*as a supplement to its original argument due to recent case law developments in the cases of In re Jimenez Galindez, 514 B.R. 79 and In re Ruiz Martinez, 513 B.R. 779 arguing that the facts of the instant case are "virtually undistinguishable" from the facts that generated the opinion and orders in In re Jimenez Galindez and In re Ruiz Martinez, thus allowing BPPR's last minute amendment to proof of claim #8 would cause undue prejudice to the Debtor and to the other creditors that timely filed their proof of claims in this case. Moreover, the Debtor moves the court for the imposition of cost and attorney's fees to BPPR pursuant to Fed. R. Civ. P. 11 and 68 for Debtor's prosecution of this matter (Docket No. 53).

The core issue before the court is an objection to an amended proof of claim filed three (3) months before Debtor's completion of payments under a confirmed plan and which asserts additional pre-petition arrears owed. However, before addressing the objection to the

amended proof of claim this court must determine whether the Debtor is precluded by 11 U.S.C. §1322(b)(2) from providing BPPR with the treatment it received under the Debtor's plan. The secured creditor argues that pursuant to 11 U.S.C. §1322(b)(2) the Debtor cannot modify the rights of holders of secured claims which are secured by debtor's principal residence and thus, BPPR should be allowed to amend its claim.

Applicable Law and Analysis

*Modification, curing of pre-petition defaults and amendments to claims secured by the debtor's principal residence*

*11 U.S.C. §1322(b)(2), (b)(3, (b)(5) and §1325(a)(5)*

The underlying issue that the court must first determine is whether the Debtor is precluded by 11 U.S.C. §1322(b)(2) from providing BPPR with the treatment it received under the Debtor's plan. A chapter 13 plan may only be confirmed if it complies with section 1325(a)(1),[1] which references other applicable provisions of this chapter, including section 1322. "Section 1325(a)(5), in turn references secured creditors and mandates plan confirmation if (1) the secured creditor accepts the plan; (2) the plan provides that the secured creditor retain its lien and be paid the full amount of the allowed claim; and (3) the debtor surrenders the property securing the claim to the creditor." Universal Am. Mort. Co. v. Bateman (In re Bateman), 331 F. 3d 821, 829 (11th Cir. 2003). Section 1322(b)(2) provides that a chapter 13 debtor may modify the rights of a secured creditor through the chapter 13 plan, except a claim secured only by a security interest in the debtor's home. See 11 U.S.C. §1322(b)(2).[2] Section 1322(b)(5)[3] provides

---

[1] Section 1325(a)(1) provides: "[e]xcept as provided in subsection (b), the court shall confirm a plan if—(1) the plan complies with the provisions of this chapter and with other applicable provisions of this title." 11 U.S.C. §1325(a)(1).

[2] Section 1322(b)(2) provides: "[s]ubject to subsections (a) and (c) of this section, the plan may—
(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. §1322(b)(2).

-8-

that chapter 13 debtors may cure a default on a secured claim within a reasonable time, while the case is pending, including defaults on home mortgages. See 11 U.S.C. §§1322(b)(5). Also, "[t]he power to cure an arrearage home mortgage is important to many Chapter 13 debtors because it is often the inability to get current on a home mortgage that forces the debtor into bankruptcy in the first place. Of course, to cure a default the debtor must be able to ascertain the amount of the arrearage. This often proves difficult because, in many cases, the mortgage holder has not yet filed a proof of claim at the time of confirmation and fails to adequately communicate with the debtor." In re Jimenez Galindez, 514 B.R. at 91 citing In re Gordon, 2011 Bankr. LEXIS 3848, *8-9 (Bankr. D. Colo. 2011).

The anti-modification provision of a secured claim pursuant to 11 U.S.C. §1322(b)(2) and the curing or waiving defaults pursuant to section 1322(b)(5) and 1322(b)(3) are not in conflict. However, there is a distinction between modifying the rights of holders of secured claims and providing for the curing of defaults. The modification of rights of claims secured by the debtor's principal residence entail substantial changes in the debtor's obligations such as: lowering monthly payments, converting a variable interest rate to a fixed interest rate, extending the maturity date of a mortgage note. See Grubbs v. Houston First American Sav. Asso., 730 F. 2d 236, 241 (5th Cir. 1984)[4]; Litton v. Wachovia Bank (In re Litton), 330 F.3d 636, 643-644 (4th Cir. 2003)[5]; Ameriquest Mortg. Co. v. Nosek (In re Nosek), 544 F. 3d 34, 44 (1st Cir. 2008)

---

[3] Section 1322(b)(5) provides that: "notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. §1322(b)(5).

[4] "Secondly, we believe that the power to 'cure any default' granted in §1322(b)(3) and (b)(5) is not limited by the ban against 'modifying' home mortgages in §1322(b)(2) because we do not read 'curing defaults' under (b)(3) or 'curing defaults and maintaining payments' under (b)(5) to be modifications of claims." Grubbs v. Houston First American Sav. Asso., 730 F. 2d at 241 citing In re Taddeo, 685 F. 2d 24, 26-27 (2d. Cir. 1982).

[5] "The bankruptcy courts have consistently interpreted the no modification provision of §1322(b)(2) to prohibit any fundamental alteration in a debtor's obligations, e.g., lowering monthly payments, converting a variable interest rate

("The provision has two components. First, §1322(b)(2) allows debtors to generally modify the rights of secured claim holders, including the amount of the payments on the claim, the timing of the payments, and the finance charges. 8 Collier P 1322.06. Second, the provision carves out a specific protection for home mortgage lenders from this more general right by preventing any modifications of those secured only by a lien on the debtor's principal residence"). "There are several other exceptions to section 1322(b)(2)'s antimodification language that are set forth in other parts of section 1322. For example, a chapter 13 plan may provide for the curing of a default on a claim secured only by a security interest in real property used as the principal residence of the debtor with respect to either a short-term mortgage or with respect to long-term mortgages on which the final payment is due after the due date of the final payment under the chapter 13 plan." See Alan N. Resnick & Henry J. Sommer, 8 Collier on Bankruptcy ¶1322.06[1][a][ii] (16th ed. 2014); See also; Ameriquest Mortg. Co. v. Nosek (In re Nosek), 544 F. 3d 34, 45 (1st Cir. 2008) ("Notwithstanding, the general exception set forth in §1322(b)(2), which prevents the modification of a lender's rights secured by a debtor's primary residence, §1322(b)(5) explicitly 'authorizes debtors to cure any defaults on a long-term debt, such as a mortgage, and to maintain payments on the debt during the life of the plan'"). Thus, to cure a default has been interpreted by courts to "reinstate a debt to its pre-default position, or it returns the debtor and creditor to their respective positions before the default." In re Litton, 330 F.3d at

---

to a fixed interest rate, or extending the repayment term of a note. See, e.g., In re Schum, 112 B.R. 159, 161-162 (Bankr. N.D. Tex. 1990) (concluding that plan was impermissible modification because it proposed to reduce monthly payments and secured valuation). In re Gwinn, 34 B.R. 936, 944-45 (Bankr. S.D. Ohio 1983), the court approved a plan as a permissible cure under §1322(b)(5), because the plan did not propose to lower monthly payments, extend the repayment period, or make the obligation conditional. It instead sought only to reinstate the original contract with a minor delay in payment. Id.; see also In re Cooper, 98 B.R. 294 (Bankr. W.D. Mich. 1989) (finding impermissible modification where plan proposed new payment schedule). Along similar lines, another bankruptcy court concluded that confirmation of a Chapter 13 plan would have constituted an impermissible modification because the plan proposed to alter fundamental aspects of the debtor's obligations, i.e., the nature and rate of interest, and the maturity features of the loan. In re Coffey, 52 B.R. 54, 55 (Bankr. D.N.H. 1985). As these decisions have emphasized, §1322(b)(2) prohibits modifications that would alter at least one fundamental aspect of a claim." In re Litton, 330 F.3d at 643-644.

-10-

644; See also; In re Taddeo, 685 F. 2d 24, 26-27 (2d. Cir. 1982) ("curing a default commonly means taking care of the triggering event and returning to pre-default conditions"); In re Clark, 738 F. 2d 869, 872 (7th Cir. 1984) ("Ordinarily, the means by which one cures a default is by paying all amounts due and owing; however, 'cure' is the end, not the means, and what the term refers to is the restoration of the way things were before the default. The plain meaning of 'cure,' as used §1322(b)(2) and (5), is to remedy or rectify the default and restore matters to the *status quo ante*"). Moreover, section 1322(c)(1) specifically provides that: "[n]otwithstanding subsection (b)(2) and applicable nonbankruptcy law—(1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." 11 U.S.C. §1322(c)(1).

In the instant case, the Debtor's plan did not violate section 1322(b)(2) or (b)(5) since the Debtor paid the secured creditor pursuant to the arrearage amount it disclosed in its original proof of claim and amended her plan to pay the pre-petition arrears in conformity with the secured creditor's original proof of claim. The arrearages were paid to BPPR in conformity with the pre-petition arrearages that the secured creditor requested in its original proof of claim. There were no discrepancies between the amended confirmed plan and the timely filed original proof of claim. In this case the Debtor paid the amount of pre-petition arrears that she was required to pay under the original proof of claim and the amended confirmed plan. The Debtor did not modify the rights of the secured creditor by lowering the monthly payments, changing the interest rate, or extending the maturity date of the mortgage note. Therefore, this court concludes that the Debtor is not precluded by 11 U.S.C. §1322(b)(2) from providing BPPR with the treatment it received under the Debtor's plan.

The secured creditor argues that the pre-petition mortgage arrearages must be cured in conformity with the underlying mortgage agreement and applicable nonbankruptcy law pursuant to section 1322(e). The provisions of the underlying mortgage agreement as to the curing of defaults and applicable nonbankruptcy law are not an issue in the instant case. The exception found in section 1322(e) for the anti-modification provision of section 1322(b)(2) for the claims of secured mortgage holders should only be employed when these two are in conflict. See In re Mercado Alvarez, 458 B.R. 645, 653 (Bankr. D.P.R. 2011). In this case, the secured creditor did not reference the particular clause in the mortgage agreement which the Debtor allegedly modified regarding the curing of the pre-petition defaults (or the calculation of the same) or the applicable nonbankruptcy law that the Debtor allegedly violated. The Debtor amended her plan to conform to the original proof of claim that the secured creditor had filed in conformity with the mortgage agreement, applicable nonbankruptcy law and detailed mortgage account information. Therefore, section 1322(e) was not infringed.

The court will now address the objection to the amended proof of claim.

*Claims Allowance Process*

This court in In re Jimenez Galindez, 514 B.R. 79 (Bankr. D.P.R. 2014) discussed the claims allowance process and stated as follows:

> "The importance of the claims allowance process is heightened in chapter 13 cases because a confirmed plan may not provide for a particular claim or a specific amount for such a claim. This situation arises in chapter 13 cases when the plan gets confirmed before the bar date for filing proofs of claims. Generally, the amount of the claim must be determined through the claims allowance process. See Alan N. Resnick & Henry J. Sommer, 8 Collier on Bankruptcy ¶13727.02[2] (16th ed. 2014).
>
> Section 501(a) provides that: '[a] creditor or an indenture trustee may file a proof of claim. An equity security holder may file a proof of interest.' 11 U.S.C. §501(a). Fed. R. Bankr. P. 3001(a) provides that: '[a] proof of claim is a written statement setting forth a creditor's claim. A proof of claim shall conform substantially to the appropriate Official Form.' Fed. R. Bankr. P. 3001(f). Moreover, Fed. R. Bankr. P. 3004 provides that: '[i]f a creditor does not timely

-12-

file a proof of claim under Rule 3002(c) or 3003(c), the debtor or trustee may file a proof of claim within 30 days after the expiration of the time for filing claims prescribed by Rule 3002(c) or 3003(c), whichever is applicable. The clerk shall forthwith give notice of the filing to the creditor, the debtor and the trustee.' Fed. R. Bankr. P. 3004.

Section 502(a) provides that: '[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.' 11 U.S.C. §502(a).  Fed. R. Bankr. P. 3001(f) provides: '[a] proof of claim executed and filed in accordance with these rules shall constitute *prima facie* evidence of the validity and amount of the claim.' Thus, claims for which proper proofs have been filed are deemed allowed unless an objection is filed.

Parties in interest that may object to proofs of claims are Trustees, debtors in chapters 12 and 13, and debtors in possession in chapter 11. See Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶502.02[2] (16th ed. 2014).  The Federal Rules of Bankruptcy Procedure and the Bankruptcy Code do not establish a bar date or deadline for filing objections to claims and confirmation of a plan does not create a bar to such objections. See Alan N. Resnick & Henry J. Sommer, 8 Collier on Bankruptcy ¶1327.02[2] (16th ed. 2014)." In re Jimenez Galindez, 514 B.R. 79, 86-87 (Bankr. D.P.R. 2014).

In addition, a secured creditor must file a proof of claim if it wants to partake in the plan distributions. This court in In re Jimenez Galindez discussed the following regarding this particular issue:

"A secured creditor is not required to file a proof of claim or participate in the bankruptcy process to protect its lien. See Dewsnup v. Timm, 502 U.S. 410, 417, 112 S. Ct. 773, 116 L. Ed. 2d 903 (1992). In addition, Section 506(d)(2) provides that: '[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless… (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of claim under section 501 of this title.' 11 U.S.C. §506(d)(2).  Thus, a secured creditor does not need to file a proof of claim to protect its lien, since the same passes through the bankruptcy process unaffected. The secured mortgage holder files a proof of claim when it wants to participate in the distribution of the plan payments." Id at 91; See also; In re Ruiz Martinez, 513 B.R. at 783 ("However, '[i]n order to receive a distribution under a confirmed Chapter 13 plan, even a secured creditor must first file a proof of claim or have one filed on their behalf.' In re Baldridge, 232 B.R. 394, 396 (Bankr. N.D. Ind. 1999)."

The court clarifies that the controversy in the instant case is different from the one in In re Jimenez Galindez. In In re Jimenez Galindez, the secured creditor filed an amended proof of claim five (5) months before completion of payments under the debtors' plan. This amended claim was deemed allowed because it was not objected by any party, thus the court had to delve into the core issue of whether an allowed amended claim pursuant to section 502 trumps the binding effect of a confirmed plan, in that case a post confirmation modified plan pursuant to sections 1327(a) and 1329(b)(2). The issue in the instant case is whether an amended proof of claim filed three (3) months before completion of plan payments which asserts additional pre-petition arrears owed should be allowed pursuant to the two-prong test established in In re Hemingway Transp., 954 F. 2d 1 (1st Cir. 1992). The same is before the court upon the Debtor's objection to BPPR's amended proof of claim.

*Amendment of Claims*

This court in In re Jimenez Galindez and in In re Ruiz Martinez, 513 B.R. 779 (Bankr. D.P.R. 2014) discussed the requirements that must be satisfied for an amended claim to be allowed. In In re Jimenez Galindez the court stated the following:

> "The Bankruptcy Code does not specifically address the issue of amending a timely filed proof of claim. "Although there is no mention of amended claims in §501 of the Code, a proof of claim that amends a prior claim probably is 'filed under section 501' and thus is 'deemed allowed' by 502(a) absent objection." Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, §284.1, at ¶3, Sec. Rev. May 5, 2010, www.Ch13online.com. The established precedent in the First Circuit is that amendments to claims are freely allowed. 'Amendments to proofs of claim timely filed are to be freely allowed, whether for purposes of particularizing the amount due under a previously-asserted right to payment, or simply to cure technical defects in the original claim.' In re Hemingway Transp., 954 F. 2d 1, 10 (1st Cir. 1992); See also; In re Crane Rental Co., 341 B.R. 118, 120 (Bankr. D. Mass. 2006) ("Amendments to proofs of claim are 'to be freely allowed as long as the purpose of the amendment is to cure a defect in the claim, to describe the claim with greater particularity, or to plead a new theory of recovery.'") citing In re Callery, 274 B.R. 51, 56 (Bankr. D. Mass.

-14-

2002). The Chapter 13 debtor and trustee should object claims that are improperly filed or classified.

Upon the filing of an objection, the allowance of an amended proof of claim is an equitable determination often approached using a two-part test: (1) was a timely similar claim asserted against the bankruptcy estate by a prior formal proof of claim or informal proof of claim; and (2) is it equitable to permit the amendment." Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, §284.1, at ¶[3], Sec. Rev. May 5, 2010, www.Ch13online.com. Thus, the first step is to determine whether there was a timely assertion of a similar claim or demand evidencing an intention to hold the bankruptcy estate liable. If the first prong is satisfied, then the court must determine whether it was equitable to allow the amendment. "The equitable determination to allow or disallow an amendment to a proof of claim timely filed is entrusted to the sound discretion of the bankruptcy court." In re Hemingway Transp., 954 F. 2d at 10. "The court must scrutinize both the substance of the proposed amendment and the original proof of claim to ensure that the amendment meets three criteria." Id. Amendments to proof of claims are reviewed under the following three (3) criteria: (i) "the proposed amendment must not be a veiled attempt to assert a distinctly new right to payment as to which the debtor estate was not fairly alerted by the original proof of claim;" (ii) "the amendment must not result in unfair prejudice to other holders of unsecured claims against the estate;" and (iii) "the need to amend must not be the product of bad faith or dilatory tactics on the part of the claimant." Id; See also; In re Crane Rental Co., 341 B.R. at 120-121. Moreover, "[t]here is no deadline in the Rules or Code after which amendment of claim is prohibited. Theoretically, a timely filed proof of claim can be amended at any time while the case is pending, at least until payments are completed under the plan." Id. at §284.1, at ¶[14]. However, a balance must be attained in the bankruptcy process since "an amended claim is not a backdoor objection to confirmation." Id. at §284.1, at ¶[24]. However, the court is forced to consider the effect that filing the amended claim has on the confirmed plan as it is the underlying reason for the objection to the Trustee's final report filed by BSPR. Although in the instant case there is no separate written objection to the amended proof of claim." In re Jimenez Galindez, 514 B.R. at 87-88; See also; In re Ruiz Martinez, 513 B.R. at 784-785.

In the instant case, the original proof of claim (claim #8-1) was filed by secured creditor BPPR against the bankruptcy estate on October 22, 2009. Claim #8-1 is a secured claim in the amount of $81,321.93 based on a mortgage note and secured with real property with a value of $125,000. BPPR in its original claim #8-1 included that the amount of arrearage and other charges as of the filing of the case were in the total amount of $3,763.84 which was broken down pursuant to the Statement of Account in the following manner: (i) title search in the amount of

$35; (ii) a line item titled "Other" in the amount of $1,867.50; and (ii) legal fees in the amount of $1,861.34. The Statement of Account also disclosed that as of the time of the bankruptcy filing there were 0 pre-petition payments of $555 in arrears. Thus, the secured creditor (BPPR) satisfies the first prong of the two- prong test, as amended claim #8-2 is similar to the original claim (#8-1), albeit increasing the amount of the pre-petition arrears.

The second prong is to determine whether it is equitable to allow the amendment of the claim based on three (3) factors; namely: (i) the proposed amendment must not be a veiled attempt to assert a new right to payment as to which the debtor estate was not fairly alerted by the original proof of claim; (ii) the amendment must not result in unfair prejudice to unsecured creditors; and (iii) the amendment must not be the product of bad faith or dilatory tactics on the part of the claimant. The court finds that in the instant case, the proposed amendment does not assert a distinctly new right because the claim is based on the same mortgage note as the original claim. The proposed amendment was filed on May 23, 2014 and the same consists of sixteen (16) pre-petition payments of $555 which total $8,880 and accumulated late charges in the amount of $654.50. The amendment also includes the pre-petition arrearages disclosed in the original claim which were in the amount of $3,763.84. Thus, the total amount of the proposed amendment claim for pre-petition arrears totals $13,298.34. The court notes that in the original claim (#8-1) the secured creditor disclosed that the total amount of the claim at the time the case was filed was in the amount of $81,321.93 and in the amended claim the total amount of the claim was in the amount of $83,209.53.

The secured creditor's amended claim #8-2 does not constitute a new claim. It is a belated attempt within the Chapter 13 Debtor's completion timeline to include pre-petition arrearages that were owed by the Debtor as of the date of the filing of the bankruptcy petition. BPPR filed its original proof of claim on October 22, 2009 and thereafter did not object to the

-16-

confirmation of the Debtor's amended plan dated October 29, 2009, which was confirmed on November 18, 2009. One of the amendments in Debtor's amended plan was to reduce the pre-petition arrearages owed to BPPR from approximately $16,000 to $3,763.84, which was the amount disclosed by the secured creditor in its proof of claim #8-1. The Debtor relied on the information provided by BPPR in the original claim. The secured creditor stopped receiving payments under the Debtor's plan in February 2011. It was not until more than three (3) years after receiving its last distribution under the Debtor's plan that the secured creditor filed its amended claim #8-2 on May 23, 2014. The late filing by BPPR to correct its own mistake left no time for the Debtor to take corrective action.

The court further finds that the secured creditor's amended proof of claim #8-2 fails to satisfy the other two (2) factors of the second prong because it constitutes a dilatory tactic by the claimant which would result in unfair prejudice not only to unsecured creditors which have already received their distributions but also to the Debtor who paid the secured creditor as requested in its original proof of claim. If the court were to allow this amended claim, this would result in the Trustee having to recover disbursements made for years to the unsecured creditors. The court also finds that such a tardily filed amended proof of claim constitutes a failed attempt by the secured creditor to correct a mistake which it had plenty of time to become aware of, but failed to diligently account for the Debtor's pre-petition mortgage arrears. BPPR should have been aware of the Debtor's pre-petition mortgage arrears from the date the Debtor filed her bankruptcy petition or shortly thereafter. The secured creditor had ample time to correct its mistake but failed to do so, thus waiving its right to receive payment of those pre-petition mortgage arrears. "A party may waive any right which it is legally entitled to, including rights secured by contract." In re Taylor, 280 B.R. 711, 716 (Bankr. S.D. Al. 2001) citing Dooley v. Weil (In re Garfinkle), 672 F. 2d 1340, 1347 (11th Cir. 1982). Therefore, this court concludes

-17-

that the secured creditor waived its right to receive payment of the pre-petition mortgage arrearages in the amount of $8,800 and the late charges in the amount of $654.50 for a total of $9,454.50. The additional disbursements paid by the Trustee to the secured creditor in the amounts of $395.75 and $391 must be discounted from the post-petition default amounts owed by the Debtor. This court also concludes that the secured creditor's amended claim filed at month 57 of a 60 month plan constitutes a collateral attack on the Debtor's confirmed plan, and at this late stage the secured creditor has no right to object to a confirmed plan.

The uncontested facts in this case, tilt the scales in favor of the binding effect of a confirmed Chapter 13 plan, and do not weigh in favor of the claims allowance process upon the filing of an amended claim. The timing of the filing of an amended secured claim on the 57th month of the Chapter 13 plan which is statutorily limited to 60 months precludes the debtor and other creditors to further move for a post-confirmation modification of the Chapter 13 plan. The Debtor had already committed all of her disposable income to fund the plan for 57 months. The Debtor at this stage is unable to meet the deficiency caused by the amended claim. The debtor fully disclosed the secured debt of BPPR in her schedules and Chapter 13 plans. The Debtor gave adequate notice of the treatment being given to BPPR, relying on the information provided by BPPR in its original claim. Any economic harm suffered by BPPR is due to its own mistake in the arrears disclosed in the original proof of claim and its belated attempt to correct the same. Clearly, balancing the binding effect of a confirmed Chapter 13 plan and the claims allowance process is a fact intensive analysis. The particular facts of this case favor adhering to the binding effect of a confirmed Chapter 13 plan.

Conclusion

For the foregoing reasons, this court finds that the Debtor is not precluded by 11 U.S.C. §1322(b)(2) from providing BPPR with the treatment it received for the curing of the pre-petition arrearages under the Debtor's plan. In addition, this court grants the Debtor's objection to BPPR's amended claim #8-2. Consequently, this court determines that there are no pre-petition mortgage arrears owed by the Debtor as the same were paid pursuant to the confirmed Chapter 13 plan and the secured creditor waived its right to receive payment of the pre-petition mortgage arrearages in the amount of $8,800 and the late charges in the amount of $654.50 for a total of $9,454.50.

SO ORDERED.

In San Juan, Puerto Rico, this 15th day of January, 2015.

Enrique S. Lamoutte
United States Bankruptcy Judge